J-S20042-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL EUGENE BENNETT | : | |
| | : | |
| Appellant | : | No. 1435 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 19, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0000478-2021

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JAMAL EUGENE BENNETT | : | |
| | : | |
| Appellant | : | No. 1436 MDA 2022 |

Appeal from the Judgment of Sentence Entered September 19, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s): CP-41-CR-0001141-2021

BEFORE:  OLSON, J., LANE, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED: SEPTEMBER 4, 2025**

In these consolidated appeals, Jamal Eugene Bennett ("Appellant") appeals *pro se* from the judgments of sentence imposed following a jury trial. After careful review, we affirm.

The trial court set forth the facts of this case as follows:

On March 18, 2021, a confidential informant (CI) arranged a transaction to purchase cocaine by calling a cellular telephone

number. Appellant … arrived at the meeting location. Detective Jonathan Rachael, in an undercover capacity, purchased 8 vials of crack cocaine from [Appellant] for $200.00 in pre-recorded and identified $20.00 bills. [Appellant] retrieved the vials from a plastic grocery bag that contained additional controlled substances. By Information filed on September 17, 2021 in CR-1141-2021, the Commonwealth charged [Appellant] with Delivery of a Controlled Substance (cocaine) and Criminal Use of a Communication Facility.[1]

After [Appellant] left the residence where the transaction occurred, he drove away in a black Honda Accord and stopped at a convenience store. Other officers, having observed [Appellant] enter and leave the residence where the drug purchase occurred, followed [Appellant] to the convenience store. [Appellant] entered the store, purchased some items and returned to his vehicle. The officers removed [Appellant] from the black Honda Accord and arrested him on a warrant in another case. [Appellant] was searched incident to arrest. The officers discovered $180.00 of the $200 in pre-recorded buy money. The plastic grocery bag was on the passenger seat of the vehicle. Officers impounded the vehicle, obtained a search warrant, and searched the vehicle. Inside the plastic grocery bag[,] the officers discovered a Glock 43 firearm, 32 vials of crack cocaine, 97 blue waxen bags of fentanyl, and approximately 3.25 grams of methamphetamine. By Information filed on April 23, 2021 in CR-478-2021, the Commonwealth charged [Appellant] with three counts of Possession with Intent to Deliver a Controlled Substance (PWID)[2] and one count of Persons Not to Possess a Firearm,[3] as [Appellant] had a prior conviction from December 15, 1996[,] which made him ineligible to possess firearms.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S.[] § 7512.

[2] 35 P.S. § 780-113(a)(30).

[3] 18 Pa.C.S.[] § 6105(a)(1).

Trial Court Pa.R.A.P. 1925 Opinion (TCO 1), 4/13/23, at 1-2.

Appellant waived his right to counsel on April 26, 2021, and has elected to represent himself throughout the litigation of this case. Standby counsel was appointed to assist Appellant for his three-day jury trial in August 2022.

Appellant was unruly and argumentative with the witnesses, the court, and opposing counsel and, mid-way through trial, left the courtroom, refusing to reappear. N.T., 8/23/22, at 49-50. Standby counsel thus conducted the remainder of Appellant's trial. At the trial court's request, counsel also spoke with the absent Appellant while he was held in the courthouse holding cell and asked him to return to the courtroom; Appellant refused, telling counsel multiple times to relay the message, "Go F*** yourself[,]" to those remaining in the courtroom. *Id.* at 62, 121. Appellant also refused to re-appear after the Commonwealth rested its case. N.T., 8/24/22, at 2.

The jury convicted Appellant of three counts of PWID and one count of Persons not to Possess a Firearm at docket number 478-2021. At docket number 1141-2021, the jury convicted Appellant of one count of Delivery of a Controlled Substance, but acquitted him of the Criminal Use of Communication Facility charge. The trial court imposed sentence on September 12, 2022, and sentenced Appellant to serve an aggregate term of 10 to 20 years of incarceration.[1] On September 19, 2022, the trial court entered an amended sentencing order, which fixed a clerical error in the September 12, 2022 sentencing order. Appellant timely filed *pro se* notices of appeal at each

---

[1] Appellant was ultimately sentenced to serve 5 to 10 years of incarceration for PWID (fentanyl), a consecutive term of 2 to 4 years for PWID (cocaine), and another consecutive term of 2 to 4 years for PWID (methamphetamine), all at docket number 478-2021. The court also imposed a consecutive term of 1 to 2 years for Delivery (cocaine) at docket number 1141-2021. Finally, Appellant received a concurrent term of 5 to 10 years for the firearms charge at docket number 478-2021.

docket number on October 7, 2022. Each *pro se* notice of appeal contained both trial court docket numbers, with a different number highlighted on each.[2] The appeals were consolidated *sua sponte* by this Court. Order, 2/15/23.

After Appellant filed his *pro se* notices of appeal, this Court noted that the certified record included no indication of an on-the-record waiver of his right to counsel. Thus, this Court issued an order directing the trial court to conduct a hearing on Appellant's desire for counsel on appeal pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). Order, 11/15/22. This hearing occurred on December 13, 2022, after which the court found that Appellant's waiver of his right to counsel was knowing, intelligent, and voluntary, and permitted him to remain *pro se*.

The court thereafter ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he complied. On May 26, 2023, Appellant filed in this Court a *pro se* Application for Relief, stating that he had not been afforded all transcripts related to his case, and asking that he be granted permission to amend his Rule 1925(b) concise statement. Thereafter, this Court issued an order directing the trial court to

_____

[2] We have found that the practice of filing identical notices of appeal containing all docket numbers, but with the docket numbers on each document noticeably separated by a checkmark or highlighting, to be compliant with prevailing practices pursuant to **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and Pa.R.A.P. 341(a). **See Commonwealth v. Johnson**, 236 A.3d 1141, 1148 (Pa. Super. 2020) (*en banc*) (holding that the appellant complied with **Walker's** dictates by filing distinguishable notices of appeal at each trial court docket number, irrespective of whether the notices bore multiple docket numbers on their face).

ensure that Appellant had certain identified transcripts within 60 days. Order, 6/21/23. This order further directed the trial court to consider whether Appellant should be permitted to amend his concise statement and, if a supplemental statement were filed, the court should prepare a supplemental Rule 1925(a) opinion. The briefing schedule was stayed.

Pursuant to this order, the trial court directed Appellant to file a supplemental statement after receiving transcripts. Appellant filed this supplement on August 21, 2023. He also filed additional amended concise statements on October 26, 2023, and November 30, 2023. The trial court prepared a supplemental opinion which addressed all of Appellant's original and amended issues. **See** Opinion in Support of Order in Compliance with Rule 1925(a) of the Rules of Appellate Procedure (TCO 2), 1/24/24.[3] Accordingly, the matter is now ripe for our review.

Appellant's *pro se* brief is not a model of clarity. Accordingly, we remind Appellant that, while we are willing to liberally construe the filings of a *pro se* party, an appellant is not entitled to any particular advantage because he lacks legal training. **Commonwealth v. Wright**, 314 A.3d 515, 523 (Pa. Super. 2024). "Under Pennsylvania law, *pro se* defendants are subject to the same rules of procedure as are represented defendants." **Commonwealth v. Blakeney**, 108 A.3d 739, 766 (Pa. 2014) (citing **Commonwealth v.**

---

[3] The supplemental opinion was prepared by the Honorable Charles Saylor, Senior Judge, who assumed responsibility for preparing the opinion after the trial court judge, the Honorable David Klementik, Senior Judge, retired during the pendency of this appeal.

***Williams****,* 896 A.2d 523, 534 (Pa. 2006) (stating that *pro se* defendants are held to same standards as licensed attorneys)).  As the U.S. Supreme Court has explained: "The right of self-representation is not a license to abuse the dignity of the courtroom.  Neither is it a license not to comply with relevant rules of procedural and substantive law."  ***Farretta v. California***, 422 U.S. 806, 834 n.46 (1975).  We finally note that a *pro se* defendant "must, to some reasonable extent, assume the risk that his lack of expertise and legal training will prove his undoing."  ***Commonwealth v. Westlake***, 295 A.3d 1281, 1286 (Pa. Super. 2023) (cleaned up).

The issues raised in Appellant's brief are reproduced below:

1.     Whether the trial court committed an error under both state and federal constitutions by failing to conduct a colloquy to determine if [Appellant] waived his right to a preliminary hearing[.]

2.     Whether the trial court abused its discretion and committed an error of the law for allowing the District Attorney[']s Office to substitute the [Assistant District Attorney (ADA)] assigned to the case for another ADA when the District Attorney[']s Office was recused from prosecuting the case[.]

3.     Whether trial stand[-]by counsel was ineffective for not unsealing the affidavit/warrant (despite [Pa.R.Crim.P.] 211 providing that it should be unsealed at the Preliminary Hearing and no later than formal arraignment[).]

4.     Whether the trial court committed error and violated [Appellant's] rights by refusing to state and provide its jurisdiction[.]

5.     Did the trial court violate [Appellant's] constitutional rights by denying his request for sanctions pursuant to ***Brady v.***

*Maryland*[,[4]] which highlighted instances where C.I.s violate their contracts, [and] engagged [*sic*] in related activities[?]

6.      Whether the trial judge committed an error and abused his discretion when he allowed several **Brady** violations by the Attorney General[']s Office to occur without sanctions[.]

7.      Whether the trial court abused its discretion and committed an error of law when the court participated in an *ex[]parte* hearing with the Attorney General's Office[.]

8.      Whether the trial court judge committed an error and abused his discretion by sentencing [Appellant] without a Presentence Investigation Report [(PSI)] or/and [an] on-the-record colloquy[.]

9.      [Whether the] the trial court [was] in error for relying on the clerk who allegedly provided … case law to re-appoint stand[-]by counsel after the judge granted counsel leave to withdraw[.]

10.      Whether the trial court abused its discretion and committed constitutional error by removing [Appellant] from the courtroom during trial over a dispute for personnel files of misconduct in order to impeach detectives who were testifying for the government[,] thereby infringing upon his right to confront witnesses against him and testify in his own defense[.]

11.      [Whether] trial counsel [was] ineffective for resting the defense without calling any witnesses or presenting any meaningful defense[,] especially after being threatened with contempt of court if he refused to represent [Appellant] and after being granted withdrawal as counsel[.]

12.      Whether the narcotics squad (NEU) and Joshua Bell[,] with the involvement of a magistrate judge[,] have engaged in deceptive practices through the judicial process to undermine various constitutional rights[,] including the 4th Amendment, due process, equal protection[,] and the right to a fair trial[,] by rubberstamping warrants lacking evidence of chain of custody and failing to document pertinent details when it use[d a] C.I. [and] witnesses who violate[d] the terms of their contract and [did] no[t] testify but instead, rel[ied] on undercover officers, to testify to hand-to-hand transactions[,] which are not documented by

---

[4] **Brady v. Maryland**, 373 U.S. 83 (1963).

video or other recording tools[.]

Appellant's Brief at unnumbered 7-10. We address Appellant's arguments *seriatim*.

> *Did the trial court commit constitutional error when it failed to conduct a waiver colloquy regarding whether Appellant was afforded a preliminary hearing?*

In his first claim, Appellant states that the trial court should have conducted a colloquy about the failure to hold a preliminary hearing in this case. However, Appellant's claimed lack of a preliminary hearing appears to be incorrect. Again, there are two dockets involved in this case. In case number 478-2021, the docket shows that a preliminary hearing occurred on April 6, 2021, and Appellant was present. *See* Magisterial Docket Sheet, MJ-29101-CR-108-2021. In case number 1141-2021, the docket shows that a preliminary hearing was scheduled for July 6, 2021, but it was continued due to Appellant's seeking recusal of the Magisterial District Justice (MDJ); the rescheduled hearing occurred before a second MDJ, and the case was then bound over for court. *See* Magisterial Docket Sheet MJ-29101-CR-219-2021. Thus, it appears that Appellant had a preliminary hearing in each of his cases, making his argument wholly without merit.[5]

---

[5] Based upon the argument in his brief, it appears Appellant is arguing that he should have had a preliminary hearing in the case where Captain Joshua Bell was the affiant, involving wholly separate and independent drug purchases to another informant in August 2019, which were initially filed via the Williamsport Bureau of Police at docket CP-41-CR-0000439-2021, and which were *nolle prossed* on September 14, 2022. This case is not before our Court.

Moreover, even if Appellant had not been given the necessary preliminary hearings, he would not be eligible for relief at this late date. "[O]nce a defendant has gone to trial and has been found guilty of the crime or crimes charged, any defect in the preliminary hearing is rendered immaterial." *Commonwealth v. Sanchez*, 82 A.3d 943, 984 (Pa. 2013). Appellant was duly convicted following a jury trial. Accordingly, Appellant's claim regarding a lack of a preliminary hearing, brought only after his conviction, is immaterial.

*Whether the trial court abused its discretion and committed an error of law for allowing the District Attorney's Office to substitute the ADA assigned to the case for another ADA when the District Attorney's Office was recused from prosecuting the case.*

In his second issue, Appellant states that he had filed a civil lawsuit against Lycoming County, including all judges on the Lycoming County Court of Common Pleas and the Lycoming County District Attorney.[6] Appellant argues that reversible error occurred when an ADA from the Lycoming County District Attorney's Office appeared for pretrial hearings in his case after he

_____

[6] The trial court explained that Appellant had filed a civil suit against the District Attorney in his role as a member of the Prison Board regarding conditions in the Lycoming County Prison during the Covid-19 pandemic. TCO 1 at 4 n.5. Appellant sought mandamus relief and changes to certain policies; he did not seek monetary damages. The trial court noted, and we agree, that "a district attorney does not have a conflict of interest in prosecuting criminal cases merely because he sits in an official capacity as a statutorily mandated member of the Prison Board." *Id.* Nonetheless, the District Attorney eventually contacted the Attorney General's office, asking them to take over Appellant's prosecution.

- 9 -

filed the civil suit, thus violating Appellant's right to a fair trial.

Notably, Appellant never filed a motion to recuse the District Attorney's Office from his case. Nor did Appellant state, in court, any specific or clear objection to the presence of the ADA who was assigned to his case, who was not a named party to Appellant's civil lawsuit. Accordingly, Appellant did not preserve his objection to this claimed error in the court below, and this matter is waived. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").[7]

*Whether stand-by counsel was ineffective for not unsealing
the warrant in this case.*

Despite at all pertinent times representing himself *pro se*, Appellant next suggests that his stand-by counsel provided ineffective assistance of counsel

---

[7] We also note that the Lycoming County District Attorney's Office followed the appropriate procedure to be used when an entire prosecutorial office has a conflict of interest. Under the Commonwealth Attorney's Act, 71 P.S. § 732-205(a)(3), the Attorney General may prosecute a criminal case in a county Court of Common Pleas upon the request of a District Attorney who represents that there is a potential for an actual or apparent conflict of interest within their office. *See, e.g.*, *Commonwealth v. Breighner*, 684 A.2d 143, 145 (Pa. Super. 1996) (discussing when a referral to the Attorney General is made due to a conflict of interest). In the case at bar, Lycoming County District Attorney Ryan Gardner wrote a letter on October 25, 2021, to the Attorney General requesting that the Attorney General's Office assume prosecution of this case, which it did. *See* TCO 1 at 4; N.T. Motions Hearing, 4/20/22, at 27-28 (wherein Deputy Attorney General and trial prosecutor in this case, Krystine M. Crist, Esq., informed the court that the Attorney General's Office had assumed the prosecution of this case). Thus, the Lycoming County District Attorney's Office followed the proper statutory procedure to seek the Attorney General's agreement to prosecute this case. 71 P.S. § 732-205(a)(3).

by failing to unseal the warrant in his case.[8]  Any issue related to the ineffective assistance of counsel is generally deferred until review under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. ***Commonwealth v. Watson***, 310 A.3d 307, 310 (Pa. Super. 2024) ("[T]rial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal.") (citing ***Commonwealth v. Holmes***, 79 A.3d 562, 576 (Pa. 2013)) (footnote omitted).  There are some exceptions to this rule.  As ***Watson*** explained:

> The ***Holmes*** Court set forth two limited exceptions to this general rule: (1) in an extraordinary case where the trial court, in the exercise of its discretion, determines that a claim (or claims) of ineffectiveness is both meritorious and apparent from the record so that immediate consideration and relief is warranted; or (2) when the defendant raises multiple, and indeed comprehensive, ineffectiveness claims, which the court, in its discretion, and for good cause shown, determines [that] post-verdict review is warranted, and the defendant waives his right to PCRA review. Subsequently, our Supreme Court adopted a third exception, which requires trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review.

***Id.*** at 310–11 (cleaned up).

Appellant fails to acknowledge either the general rule, or any of the exceptions which apply to litigating issues of ineffective assistance of counsel on direct appeal.  Moreover, it is clear that Appellant's claim, as advanced,

---

[8] The Commonwealth states that there was no warrant that was sealed in this case.  As this issue is not properly before this Court for the reasons stated *infra*, we need not address whether a sealed warrant existed.

does not demonstrate any extraordinary circumstance whereby counsel's ineffectiveness is clearly apparent from the record and immediate consideration is required. Nor did Appellant ever waive his right to PCRA review. Thus, Appellant's ineffectiveness issue is not properly before us.

*Whether the trial court committed error and violated Appellant's rights by refusing to state and provide its jurisdiction.*

In this issue, Appellant alleges, through a combination of his hand-written brief and the insertion of roughly 25 type-written pages that appear to have been prepared for another case,[9] that the trial court lacked jurisdiction in his case. Appellant's argument confusingly references the Uniform Commercial Code and contract law, and alleges that the trial court erred by failing to provide him with, *inter alia*, the name of an individual who initiated a tort action against him.

No relief is due. All Courts of Common Pleas have statewide subject matter jurisdiction in cases arising under the Pennsylvania Crimes Code. ***Commonwealth v. McGarry***, 172 A.3d 60, 65–66 (Pa. Super. 2017) ("Jurisdiction relates to the court's power to hear and decide the controversy presented. All courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code [pursuant to 42 Pa.C.S.

---

[9] We note that the printed material is type-written, while the rest of Appellant's brief is hand-written, and it references crimes for which Appellant was not convicted. Both of these facts suggest that the type-written pages were initially written for a separate appeal for a different defendant.

- 12 -

§ 931].").   Here, Appellant was charged with offenses under the Controlled Substance Act and the Crimes Code based upon his illegal conduct of selling drugs and possessing firearms in Lycoming County.  Therefore, the Lycoming County Court of Common Pleas had the power and jurisdiction to hear his case.  *Id.*   Contrary to Appellant's claim, the trial court did not have to 'state its jurisdiction' before conducting Appellant's trial.  Thus, Appellant's issue is meritless.

> *Did the trial court violate Appellant's constitutional rights*
> *by denying his request for sanctions pursuant to **Brady**?*
>
> *Whether the trial judge committed an error*
> *and abused his discretion when he allowed several*
> ***Brady** violations by the Attorney General's Office*
> *to occur without sanctions.*

Appellant's next two issues concern the same topic and will therefore be considered together.   Appellant argues that the Commonwealth violated **Brady** by using an unreliable CI, and by failing to provide him with the personnel or disciplinary files of various police officers involved in this case.

First, in regard to Appellant's claim that the CI was unreliable, Appellant seems to be focusing on the CI used in case 439-2021 — his *nolle prossed* case which is not before this Court.  **See** Appellant's Brief at unnumbered 23-30 (discussing Captain Bell's affidavit of probable cause and his informant used in case 439-2021).  Appellant's argument as to why he was entitled to the disclosure of the CI's identity in that case is confusing at best, and is not meaningfully developed with citations to (and coherent discussion of)

- 13 -

pertinent case law. Thus, we deem it waived. *See Commonwealth v. Spotz*, 18 A.3d 244, 323-26 (Pa. 2011) (stating that generalized assertions of error are not arguments, much less *developed* arguments supported with citations to relevant legal authority, resulting in waiver); *see Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Appellant also challenges the denial of his request for any personnel files of the officers involved in his case as violating *Brady*. As background, throughout the litigation of this case, Appellant focused his defense strategy on claiming that certain officers had previously lied and violated the constitutional rights of defendants in other cases, making them unbelievable in Appellant's case. Appellant argued that he was entitled to the personnel files and any disciplinary records of these officers so that he could prove to the jury that they had lied in the past and, thus, they were lying about him now. Appellant maintains that the Commonwealth violated the dictates of *Brady* by failing to turn over these files.

We disagree. To establish a *Brady* violation, "an appellant must prove

three elements: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued." *Commonwealth v. Spotz*, 47 A.3d 63, 84 (Pa. 2012). *Brady* imposes an affirmative duty on the Commonwealth to disclose to the defendant all favorable evidence material to guilt or punishment, even in the absence of a request for the same. *Commonwealth v. Thomas*, 323 A.3d 611, 638-39 (Pa. 2024). *Brady* material has also been held to include evidence that would impeach the credibility of a witness, *i.e.*, evidence of dishonest acts, bias, motive, and any other evidence tending to affect witness credibility. *Commonwealth v. Chmiel*, 30 A.3d 1111, 1130 (Pa. 2011). "In order to be entitled to a new trial for failure to disclose evidence affecting a witness's credibility, the defendant must demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." *Id.* at 1130-31.

Moreover, while impeachment evidence which goes to the credibility of a primary witness against the accused is critical evidence which will be material to the case, "mere conjecture … is not sufficient to establish a *Brady* violation." *Id.* at 1131. Defendants alleging a *Brady* violation face a high bar, as "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002) (citation omitted).

It is well-established that a prosecutor has a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." ***Commonwealth v. Natividad***, 200 A.3d 11, 26 (Pa. 2019). Nonetheless, evidence is only deemed "favorable" in this analysis if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. ***Id.***

Here, after Appellant made continued demands for disciplinary records related to various officers involved in this case, and, when discovery was ordered by the trial court, the Commonwealth filed an *ex parte* motion under seal with the trial court, asking that the records be deemed irrelevant to this case. ***See*** Commonwealth's *Ex Parte* Motion to Authorize Non-Disclosure of Discipline of Law Enforcement Officers, 7/12/22.[10] In the motion, the Commonwealth discussed each case argued by Appellant as evidence of the improprieties committed by various officers. After review, the trial court granted the Commonwealth's request for non-disclosure and issued an order and memorandum on August 3, 2022, explaining its reasoning as follows:

> Appellant incorrectly believed that anytime a suppression [motion] was granted, a law enforcement officer was sued, or a law enforcement officer was disciplined, it meant the law enforcement officer was a liar and Appellant could impeach the individual with those documents. The cases cited by Appellant … dealt primarily with Detective Tyson Havens and [Captain] Joshua

---

[10] The propriety of the Commonwealth's motion is discussed in Appellant's next issue in this appeal.

- 16 -

Bell of the Williamsport Bureau of Police. The disciplinary records dealt with Detective Havens, Detective Robert Anderson, and Detective Michael Caschera. None of these documents and records were relevant to these proceedings. None of the disciplinary actions involved lying or dishonesty. The cases did not involve Appellant. They involved other individuals and were not relevant to these proceedings.

TCO 2 at 11-12.

We agree with the trial court's analysis. First, Captain Bell was not involved in the cases at issue, as he was the affiant in 439-2021, which was *nolle prossed* by the Commonwealth without objection from Appellant. Further, while we agree that "a criminal defendant is entitled to know about any information that may affect the reliability of the witnesses against him," he is not entitled to "wholesale inspection of investigatory files, which may contain material completely irrelevant to the defendant's defense." **Commonwealth v. Mejia-Arias**, 734 A.2d 870, 876 (Pa. Super. 1999).

In **Commonwealth v. Bozyk**, 987 A.2d 753 (Pa. Super. 2009), this Court set forth the standards to be used in evaluating whether internal police documentation is discoverable by a defendant:

The pertinent case law permits a police witness to be cross-examined about misconduct **as long as the wrongdoing is in some way related to the defendant's underlying criminal charges and establishes a motive to fabricate**. **Commonwealth v. Peetros**, 535 A.2d 1026 (Pa. 1987) (police witness had been demoted after it was discovered he repeatedly took bribes; defendant was improperly restricted from impeaching [the officer] with this evidence since it bolstered entrapment defense in defendant's bribery prosecution); **Commonwealth v. Dawson**, 405 A.2d 1230 (Pa. 1979) (police officer was under investigation at trial and had been demoted for beating defendant's co-defendant; defendant should have been permitted

to question officer about the matter since it provided officer with motive to obtain conviction against defendant as well as to fabricate fact that defendant had confessed); **Commonwealth v. Sullivan**, 402 A.2d 1019 (Pa. 1979) (police witness faced suspension based upon outcome at defendant's trial and defendant should have been allowed to explore that matter at his trial); **Commonwealth v. Shands**, 487 A.2d 973 (Pa. Super. 1985) (defendant awarded new trial because he had not been permitted to impeach officer with fact that he was part of group of police officers who were racially biased, made false arrests, and perjured themselves in criminal prosecutions).

However, if the prior police behavior is unrelated to the present matter and irrelevant, the trial court is permitted to restrict questioning on the prior incident. **Commonwealth v. Boczkowski**, 846 A.2d 75 (Pa. 2004) (fact that police witness withheld evidence in prior case was not relevant because there was no evidence of withholding evidence in case at hand); **Commonwealth v. Bright**, 420 A.2d 714 (Pa. Super. 1980) (defendant could not impeach police officer with potential disciplinary action for excessive use of force by different officer since that cross-examination had no relationship to case in question); **see also Commonwealth v. Guilford**, 861 A.2d 365, 369 (Pa. Super. 2004) (quoting **Bright**, [420 A.2d] at 716) ("[A] witness may not be contradicted on 'collateral' matters, … and a collateral matter is one which has no relationship to the case at trial.").

**Id.** at 757 (emphasis added; citations modified).

We note that, as Appellant represented himself *pro se* at trial, the trial court was reasonably reluctant to permit him to have physical copies of these officers' entire personnel files and/or disciplinary records, which could then be easily disseminated throughout the prison. Caution here was warranted as, throughout the litigation of this case, Appellant referred to his discussions with other inmates about the details surrounding both his case and the cases of other defendants.

With this in mind, however, we agree that Appellant was entitled, at

- 18 -

least, to the court's inspection of the files in question, which should occur when there exists at least some reason to believe the inspection would lead to the discovery of evidence helpful to the defense. *Commonwealth v. Gartner*, 381 A.2d 114, 120 (Pa. 1977). Here, the trial court reviewed the records in question, including all specific instances referenced by Appellant where he claimed that the officers in the case against him had been found to be untruthful. With respect to Captain Bell, the court did not err in declining to reveal his file to Appellant, as Captain Bell was not a part of this case, his only involvement was with 439-2021, and that case that was *nolle prossed* on September 14, 2022. Captain Bell did not testify against Appellant at his trial. Thus, any information regarding Captain Bell in the investigatory files would not be material to Appellant's case.

With respect to the undercover officers who participated in the drug sale and testified against Appellant at his trial, Detective Johnathan Rachael and Detective Sarah Edkin, no disciplinary records were found. *See* TCO 2 at 11-12. There were records included in the requested files related to Detective Tyson Havens, Detective Robert Anderson, and Detective Michael Caschera — yet, according to the court, these files did not evince dishonesty on the officers' parts, did not include information about Appellant or his case, and were thus not relevant to these proceedings. *See id.* at 12. We note that these three detectives were primarily involved in this case in a surveillance capacity, and they did not observe the actual drug sale (like the undercover

detectives did); they only followed Appellant's car after the sale and assisted in his arrest. *See* N.T., 8/22/22, at 138 (Detective Anderson's stating he was assigned to conduct surveillance of the undercover buy); N.T., 8/23/22, at 63-65 (Detective Caschera's testifying that his role was providing security for the undercover officers); *id.* at 73-74 (Detective Havens' indicating he performed surveillance in support of the undercover officers). Appellant's arguments surround cases in which these detectives had participated but which, on appeal, had convictions overturned because evidence was ordered to be suppressed. The trial court authored a memorandum in which it discussed the suppression cases that Appellant had advanced, and explained how these cases/incidents were irrelevant to Appellant and his case.[11] Trial Court Memorandum, 8/3/22. Importantly, we agree with the trial court that the incidents listed by Appellant **did not** result in disciplinary action, and did not involve elements of dishonesty. *Id.* at 4-8.

Accordingly, after review, we cannot conclude that the requested files were material to Appellant's defense. Appellant's supposition that the officers had been disciplined turned out to be erroneous, and there was no evidence of discipline related to dishonesty to be found in the files. Appellant thus

---

[11] With respect to Detective Havens, there were four incidents of misconduct, none of which involved actions of dishonesty or fictitious affidavits of probable cause for a warrant. Detective Caschera had one verbal reprimand for a matter not involving dishonesty, and not related to Appellant. Detective Anderson had one written reprimand which did not involve a claim that he was being dishonest. Trial Court Memorandum, 8/3/22, at 8.

cannot demonstrate that the reliability of these witnesses was determinative of his guilt. ***Chmiel***, ***supra***. We agree with the trial court that Appellant failed to demonstrate that the personnel files contained exculpatory information which would be relevant to this case, and that there is no reasonable probability that, had these files been disclosed, the result of Appellant's trial would have been different. ***Natividad***, ***supra***. Thus, the Commonwealth did not violate ***Brady*** by refusing to turn the disciplinary files over to Appellant. ***Chmiel***, ***supra.***

> *Whether the trial court abused its discretion and committed an error of law when the court participated in an ex parte hearing with the Attorney General's Office.*

In this claim, Appellant suggests that the court erred in having an *ex parte* hearing with the Attorney General's office. The trial court insists that such a hearing did not occur. The trial court explained that Appellant had a pre-trial conference in which he continued to argue that he was entitled to have various disciplinary records related to the officers in his cases. By the end of this hearing, the court ruled that Appellant needed to be given a copy of all surveillance videos, and further held that Appellant was entitled to review the officers' personnel files. TCO 1 at 5 ("[I]f there were instances which would cast [the officers'] character for truthfulness in doubt, [Appellant] would be allowed to review the personnel files."). Thus, the trial court issued an order directing the Commonwealth to make the files available for Appellant's review. Discovery Order, 7/11/22.

The next day, on July 12, 2022, the Commonwealth filed a motion entitled, "*Ex parte* Motion to Authorize Nondisclosure of Discipline of Law Enforcement Officers." Attached to this motion were the disciplinary records in question and arguments suggesting that disclosure to Appellant should not be authorized. TCO 1 at 6. The court then conducted its own review of the files and issued a detailed Memorandum of Law, explaining that, after review, it determined that, because the files did not include documented instances of misconduct or disciplinary action, disclosure to Appellant was not warranted. Trial Court Memorandum, 8/3/22.

Appellant argues that it was error to have an *ex parte* hearing. Yet, no hearing occurred. Rather, the parties followed the procedure as outlined in our Rules of Criminal Procedure when a party believes that a protective order is warranted. When a court orders a party to provide discovery, such order can be challenged under our Rules by asking for *in camera* review of the material by the court. The pertinent rule provides:

> **(F) Protective Orders.** Upon a sufficient showing, the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion of any party, the court may permit the showing to be made, in whole or in part, in the form of a written statement to be inspected by the court *in camera*. If the court enters an order granting relief following a showing *in camera*, the entire text of the statement shall be sealed and preserved in the records of the court to be made available to the appellate court(s) in the event of an appeal.

Pa.R.Crim.P. 573(F). Thus, when the court ordered the production of the officers' personnel records, the proper way for the Commonwealth to

challenge the court's order was to file a motion seeking protection of that evidence. The Commonwealth properly did so. Then, under the procedures outlined in Rule 573(F), the trial court reviewed the materials to make the ultimate determination of whether the information was required to be disclosed to the defense. The trial court performed this task appropriately. No relief is due on this claim.

*Whether the trial court judge committed an error and abused his discretion by sentencing Appellant without a PSI or/and on-the-record colloquy.*

Appellant next asserts that the court sentenced him without the proper PSI; that is not true. At sentencing, the trial court referenced reviewing Appellant's PSI. N.T. Sentencing, 12/12/22, at 25.

Appellant's claim is apparently not that there was **no** PSI prepared, but that the court erred by considering the PSI where Appellant had refused to participate in the preparation of that report. Yet, Appellant's input is not mandated by our Rules of Procedure. **See** Pa.R.Crim.P. 702 (discussing the court's ordering of a PSI). Appellant had the ability to decide whether to assist in the preparation or the pre-sentence report or not. He decided not to. That does not mean that the court erred by considering the information that was in the PSI. Thus, no relief is due.

*Was the trial court in error for relying on the clerk who allegedly provided case law to re-appoint stand-by counsel after the judge granted counsel leave to withdraw?*

This issue concerns the point in Appellant's trial where he was removed

from the courtroom, and Attorney Matthew Diemer, Esq., litigated the remainder of Appellant's trial. Although Appellant's statement of this issue seems to reference the trial court's law clerk, the essence of his claim is that he did not want Attorney Diemer to represent him in any capacity. Consideration of this issue also involves Appellant's next claim; thus, we address them together.

*Whether the trial court abused its discretion and committed constitutional error by removing Appellant from the courtroom during trial over a dispute for personnel files of misconduct in order to impeach detectives who were testifying for the government thereby infringing upon his right to confront witnesses against him and testify in his own defense.*

This issue arose during the second day of Appellant's trial. During the cross-examination of Detective Curt Loudenslager, Appellant argued that the detective's testimony about documents seized during the search of Appellant's car (apparently, a banking record) was improper. N.T., 8/23/22, at 43. Appellant attempted to use the testimony about these documents to argue that they were proof of a tort claim. *Id.* at 44. The Commonwealth objected to Appellant's questions, stating that the only purpose served by the documents in question was to link the car in which they were found to Appellant. *Id.* at 45. Appellant then attempted to ask the detective about a discrepancy that he believed he found between the detective's testimony and the prior testimony of Detective Kevin Dent, regarding whether Appellant's car, as he left the drug sale, stopped at a Kwik-Fill gas station or just drove through the parking lot of the Kwik-Fill. *Id.* at 47. The following discussion

then occurred:

[DETECTIVE LOUDENSLAGER]:     I don't see the difference in what you're saying and what I said.

[APPELLANT]:     The difference is both of you all's lying because the Kwik Fill - -

[THE COMMONWEALTH]:     Objection.

[THE COURT]:     Sustained.  Sustained.  [Appellant,] you're not here to accuse them - -

[APPELLANT]:     We will go through this all day until the truth comes out.

[THE COURT]:     Well….

[APPELLANT]:     All day.

[THE COURT]:  You're not going to be accusing people of lying on the witness stand.

[APPELLANT]:     That's what you all doing to me for the last 2 days.

[THE COURT]:     No one has accused you of anything.  You haven't testified.

[THE COMMONWEALTH]:     Your Honor, may we approach?

[THE COURT]:     You may, you may.

[APPELLANT]:     You can argue what you want, I'm going to tell the jury the truth.  I don't care how you all feel.

[THE COURT]:     [Appellant,] would you like to come and be involved in this conversation?

[APPELLANT]:     You go ahead and do what you all do I'll still tell the truth.

    (WHEREUPON the following discussion was held at sidebar between the Court and Commonwealth, [Appellant] did not attend:)

[THE COMMONWEALTH]:     Your Honor, we're just going to request if he's going to continue to have outbursts then he be

removed from the courtroom. He's being extremely disruptive to the [c]ourt and members of the jury.

[THE COURT]: I understand, thank you.

(WHEREUPON Proceedings return to open court.)

[THE COURT]: [Appellant], this is your opportunity for cross-examination, it is not time for outbursts about - -

[APPELLANT]: - - limit my cross-examination, Your Honor. You've done that for the last 17 months. You're not going to do it again, and if you are[,] we can go ahead and cease this whole jury trial today and go about our business.

[THE COURT]: And if we're going - -

[APPELLANT]: Because I'm going to speak the truth regardless - -

[THE COURT]: - - if we're going to have a - - if we're going to have outbursts, [Appellant], we'll have you removed from the courtroom.

[APPELLANT]: Then let's go because you wasting my time and the jury time. I'm going to tell the truth, I don't care what you all are saying.

[THE COURT]: Well you're not doing anything if you're not in the courtroom.

[APPELLANT]: Okay, well guess what, we'll figure it out later. You can lie to the jury, I'm not. Ready? Can I leave or you want to hold me under contempt?

[THE COURT]: No, you're - - you're welcome to leave. This is your - - this is your choice.

[DEPUTY SHERIFF]: I ask you to remain seated until we get you shackled - -

[APPELLANT]: Can you order him so he can stop being robo cop and get me out of here?

[DEPUTY SHERIFF]: [Appellant,] please stand up.

(WHEREUPON, [Appellant] is cuffed and belted and removed from the courtroom.)

[APPELLANT]:     Enjoy the lies that you going to hear from these people, they continue to do it, they're pretty good at it.

***Id.*** at 47-50.

Once Appellant was removed, the trial court turned to stand-by counsel, Attorney Diemer, asking him to assume the defense. ***Id.*** at 50. The jury was excused, and Attorney Diemer argued that Appellant had forfeited his right to counsel. The trial court, noting that Appellant had strenuously objected to Attorney Diemer's involvement in his case, felt that Appellant had voluntarily waived stand-by counsel by his conduct which resulted in his removal from the courtroom. Accordingly, the court noted that Attorney Diemer would be dismissed from the case. ***Id.*** at 52. However, the trial court then took a brief recess, during which it changed its mind about the necessity for stand-by counsel. Upon returning from recess, and with the jury empaneled, the court explained that Attorney Diemer would conduct the defense. ***Id.*** at 54. Appellant now maintains that this was error.

Preliminarily, we note that this issue is a pure question of law, and this Court therefore applies a *de novo* standard of review. ***Commonwealth v. Tejada***, 188 A.3d 1288, 1292-93 (Pa. Super. 2018). This issue deals with the distinction and potential conflict between a defendant's right to be present for his trial proceedings and his right to represent himself during trial.

In its supplemental opinion, the trial court explained what happened during the recess in question:

> During the recess, the trial judge and the law clerk looked at some case law and became concerned about the validity of a verdict if no one were sitting at defense table. Following the recess, the court re-instated stand[-]by counsel and had him take over the defense of the case.

TCO 2 at 9.

We now conclude that the trial court correctly determined that the issue of Appellant's removal from the courtroom due to his disruptive behavior was distinct from the related issue regarding a defendant's right to represent himself at trial. In **Tejada**, this Court considered an analogous case. Tejada had represented himself *pro se* prior to trial, and the trial court had conducted a colloquy to establish that his request to proceed *pro se* was knowingly and intelligently entered. **Tejada**, 188 A.3d at 1290. Thereafter, Tejada demanded a competency hearing, but the request was denied. **Id.** When the trial court inquired of Tejada whether he planned to stay and participate in his defense, Tejada claimed that the court "had no jurisdiction" and that he was "not the defendant." **Id.** In response, the trial court stated that Tejada could remain in the courtroom for now, but that if he disrupted the proceedings, he would be removed. **Id.** Tejada did not have stand-by counsel for his trial, and the court refused to appoint one, saying that it was "too late" for Tejada to change his mind about the issue. **Id.** at 1291.

On appeal, Tejada challenged the denial of counsel at trial. This Court noted that a "criminal defendant has both a rule-based right to be present for trial, Pa.R.Crim.P. 602, as well as a constitutional right." **Id.** at 1293. Nonetheless, "'a defendant can lose his right to be present at trial if, after he

has been warned by the judge that he will be removed if he continues his disruptive behavior, he nevertheless insists on conducting himself in a manner so disorderly, disruptive, and disrespectful of the court that his trial cannot be carried on with him in the courtroom.'" **Id.** (citing **Illinois v. Allen**, 397 U.S. 337 (1970)). Tejada had been unruly and disruptive, making his removal from the courtroom due to that activity permissible. **Id.**

However, this Court was concerned that by removing the *pro se* Tejada from the courtroom, "the Commonwealth encountered no opposition, raising grave doubts as to the validity of the verdict." **Id.** at 1294. Moreover, we noted that, while criminal defendants have a right to self-representation as a corollary to the right to counsel under the 6th Amendment, such a right is not absolute. **Id.** at 1296. After considering the importance of a defendant's right to counsel, as well as the orderly administration of trials, the panel held:

> [A] defendant may forfeit his right to be present for his trial and his right of self-representation through his behavior, but the trial court cannot continue proceedings (1) without a waiver of the right to representation, or (2) protecting the right to representation through other means, such as by the substitution of stand[-]by counsel.

**Id.** at 1298. As Tejada did not have standby counsel to represent him after his removal, he was entitled to a new trial. **Id.**

After review of the record in this case, we are satisfied that the trial court was correct to ensure that Appellant was represented by stand-by counsel during the portion of the trial from which Appellant was absent. Although Appellant argues that the lack of a colloquy regarding his right to

counsel was error, no colloquy is required when a defendant forfeits his right to counsel by his conduct. ***Commonwealth v. Lucarelli***, 971 A.2d 1173, 1179 (Pa. 2009). The trial court's discretion to permit Appellant to forego stand-by counsel ended when Appellant was removed from the courtroom. At that point, the court acted to protect Appellant's due process rights and ensured that Attorney Diemer would represent Appellant's interests in his absence. ***Tejada***, ***supra.*** Accordingly, no relief is due.

> *Was trial counsel ineffective for resting the defense without calling any witnesses or presenting any meaningful defense especially after being threatened with contempt of court if he refused to represent Appellant and after being granted withdrawal as counsel.*

In his next issue, Appellant again asserts a claim regarding the ineffective assistance of trial counsel. We reiterate that this is not a proper issue for this direct appeal, but instead must be deferred until review under the PCRA . ***Watson***, ***supra.***

> *Whether the narcotics squad (NEU) and Joshua Bell with the involvement of a magistrate judge have engaged in deceptive practices through the judicial process to undermine various constitutional rights, including the 4th Amendment, due process, equal protection and the right to a fair trial, by rubber stamping warrants lacking evidence of chain of custody and failing to document pertinent details when it uses C.I./witnesses who violate the terms of their contract and do not testify but instead, rely on undercover officers, to testify to hand-to-hand transactions which are not documented by video or other recording tools.*

In his last issue on appeal, Appellant revisits some of his prior arguments to complain about the way that the Commonwealth conducted his trial. Some of his complaints include: the lack of testimony from the CI in

Captain Bell's case; the lack of testimony from the CI in the subsequent sale to Detective Rachael; no video evidence of the drug sale was presented at trial; the police improperly searched Appellant's car; the warrant from case 439-2021 (Captain Bell's *nolle prossed* case) could not be relied upon because it was two years old; and the magistrate who approved the arrest warrant was biased against him. Appellant finds fault with the fact that the only witnesses testifying to the drug sale were police officers. In essence, Appellant challenges the sufficiency of the evidence for his convictions.

Our standard of review for a sufficiency claim is well-established:

Because a determination of the sufficiency of the evidence presents a question of law, "our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Williams***, 176 A.3d 298, 305 (Pa. Super. 2017). Further, we analyze this issue under the following guidelines:

When reviewing challenges to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as the verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. Moreover, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented.

***Commonwealth v. Toomer***, 159 A.3d 956, 960–61 (Pa. Super. 2017) (internal citations and quotation marks omitted).

***Commonwealth v. Ewida***, 333 A.3d 1269, 1279 (Pa. Super. 2025).

Appellant maintains that the case against him was unproven because the Commonwealth only provided testimony from the police officers involved, there were no videos of the sale, and the CI did not testify. Yet, there is "no requirement that videotape or physical evidence be presented at trial. Instead, police officers' testimony is sufficient" to prove the elements of Appellant's crimes. *Commonwealth v. Giron*, 155 A.3d 635, 638 (Pa. Super. 2017) (citations omitted); *see also Commonwealth v. Leatherbury*, 469 A.2d 263, 266 (Pa. Super. 1983) ("The sole testimony of a police eyewitness may be sufficient to establish the elements of a crime."). Moreover, the Commonwealth is not obligated to call a witness "as long as testimony is not withheld solely because it would be favorable to the defendant." *Leatherbury*, 469 A.3d at 266.

In this case, Captain Bell was involved in case 439-2021, a different drug sale than the one in the instant case. He did not have relevant testimony to provide for trial to determine whether Appellant had engaged in a drug sale to the undercover officers. The CI used in Captain Bell's case likewise was irrelevant to any issue concerning the sale involved in the instant case. Thus, any testimony provided by either witness on the 439-2021 case would have been irrelevant or confused the issues for the jury. Accordingly, Captain Bell's testimony would not have been permitted at trial. Pa.R.E. 402 ("Evidence that is not relevant is not admissible."); Pa.R.E. 403 (stating that evidence may be excluded if its probative value is outweighed by the danger of confusing the jury).

Appellant was convicted of possession with the intent to deliver three different controlled substances: fentanyl, cocaine, and methamphetamine. The possession with intent to deliver statute provides:

(a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:

***

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30). Appellant was also convicted of being a person not to possess a firearm, as follows:

**(a) Offense defined.--**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a). Appellant has a 1996 conviction which made him ineligible to possess firearms. TCO 1 at 2.

Evaluating the record in the light most favorable to the Commonwealth, as required by our standard of review, we have no difficulty in concluding that the Commonwealth provided sufficient evidence of the crimes for which Appellant was convicted. The trial testimony of Detective Rachael established

that Appellant was contacted by text message from a CI, and he subsequently arrived at the CI's home carrying two plastic bags. Appellant interacted with the CI along with Detectives Rachael and Edkin, asking them what drugs they were interested in because "he had everything," and then, in exchange for $200.00 in marked currency, he provided the detectives with eight containers of crack cocaine. N.T., 8/22/22, at 79-87. Not only did Appellant tell his prospective buyers that he could provide a variety of controlled substances, but Detective Rachael also actually noticed that Appellant's bag contained, among other things, rice (which is commonly used by dealers to keep their drugs dry) and multiple blue waxine bags commonly used to distribute fentanyl. *Id.* at 86.

Further, not only did the detective observe a large quantity of drugs in Appellant's bag, but he also observed Appellant leave the informant's home with the bag. Detective Rachael testified that he "knew that the bag was in the vehicle front passenger seat [of Appellant's vehicle]. I obtained a search warrant for the vehicle, and seized the bag and its contents." *Id.* at 94. Appellant's wallet was seized from the vehicle, and it contained $180.00 of the $200.00 marked buy money. *Id.* at 99-100.[12] Once the bag was searched, it revealed a handgun, along with the assortment of narcotics. *Id.* at 104-05.

---

[12] Appellant had purchased a pack of cigarettes just before his arrest. *Id.* at 99.

Accordingly, reviewing the evidence in the light most favorable to the Commonwealth, it is clear that Appellant was in possession of a handgun and an assortment of controlled substances when he was arrested. As noted in our standard of review, the jury is free to believe all, some, or none of the testimony presented at trial; therefore, it was permitted to believe Detective Rachael that Appellant was the one who sold him the crack cocaine and possessed the other drugs and the gun. Appellant does not argue otherwise, but merely objects to being arrested on the basis of the prior arrest warrant. The evidence is clearly sufficient to support his convictions. No relief is due on Appellant's last issue.

Accordingly, finding no reversible error in the issues raised by Appellant, we affirm the judgment of sentence imposed.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 09/04/2025